Marie Zwierzycki, Appellant, v. Metropolitan Life
Insurance Company, Appellee.

Gen. No. 42,005.

Heard in the second division of this court for the first district at the October term, 1941. Opinion filed November 17, 1942.

McCLANAHAN & McCLANAHAN, of Chicago, for appellant; ALICE M. McCLANAHAN, of Chicago, of counsel.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellee; NATHANIEL RUBINKAM and JOHN C. MELANIPHY, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff, as beneficiary of two life insurance policies issued by the Metropolitan Life Insurance Company, brought suit to recover $1,000 under a double indemnity clause in the policies which provided that "Upon receipt of due proof that the death of the Insured resulted, independently of all other causes, from bodily injuries caused solely by external, violent, and accidental means, the Company will pay, as an additional death benefit, an amount equal to the amount payable under the Schedule, . . . The additional benefit shall not be payable if the Insured's death . . . (e) is the result of participation in an assault or felony." Defendant admitted the issuance of the policies and the death of the insured, denied that he came to his death from injuries sustained solely through external,

violent and accidental means, averred that insured had met his death at the hands of a police officer in Chicago, which was held by the coroner's jury to be justifiable homicide, averred that under the terms and provisions of the policies the accidental death benefit was not payable, and denied that it was indebted to plaintiff.

The case has been twice tried before juries and in both instances verdicts were returned in favor of plaintiff, assessing her damages at $1,000. On the first trial defendant's motion for a new trial was allowed. At the conclusion of the second hearing and after the jury had returned its verdict, defendant moved for a new trial, but before the court passed on that motion defendant also moved for the entry of a judgment in its favor notwithstanding the verdict, which the trial court granted. The motion for a new trial was never disposed of and judgment was entered in favor of defendant, from which this appeal is taken.

The principal question involved is whether plaintiff was entitled to the accidental death benefit provided for in the policies. The case presents unusual circumstances. Harold J. Fuhry, who at the time of the incident had been an officer on the police force in Chicago for about four years, finished his official duties at four o'clock in the afternoon of May 24, 1939, went home, changed to civilian clothes, called for a woman companion, and in the course of the evening parked his car among the weeds in a vacant lot near 45th street and Kildare avenue. The identity of the woman was undisclosed and the court sustained objections to interrogatories of plaintiff's counsel as to whether Fuhry was married and whether the companion was Fuhry's wife. Fuhry testified that he and his companion had been listening to a radio program, that shortly before midnight he had turned off the radio and while placing it in the back seat of his car he saw a man with a gun in his hand approach the

car from out of the weeds on the right. The windows of Fuhry's car were open only about two and one-half inches on each side. He says that the man came up to the car and said "stick them up," at the same time projecting a pistol through the small opening in the window. He could not get his hand inside as the window was not sufficiently open for that purpose. Thereupon Fuhry grabbed his own pistol from the back seat cover and shot twice through the window, one shot hitting the insured in the left hand and the other shot striking him in the jaw and ricocheting down into his shoulder on the left side. The insured fell to the ground, and, according to Fuhry, he found the gun alongside the injured man, placed it in his (Fuhry's) pocket, lifted insured from the ground and walked with him some two blocks through the vacant lots, to an A & P bakery at 47th street and Kildare avenue. There was a watchman at the bakery who, at Fuhry's command, guarded insured while Fuhry called the police, who upon arrival removed insured to the Bridewell hospital, where he died five days later. A certified copy of the death certificate indicates that insured was shot by a police officer and contains a finding by the coroner's jury that it was justifiable homicide.

Plaintiff's counsel comment on the unusual circumstances under which Fuhry required insured, who was mortally wounded, to walk two blocks to the A & P bakery. It would have been far more humane, and probably in accordance with the usual police practice, to either call a police ambulance to the scene of the shooting or to have removed insured in Fuhry's automobile to a hospital, where he could have been treated without undergoing unnecessary exertion and delay. It is a fair inference that Fuhry chose the means employed because he sought to protect the identity of his companion and also because he did not want to expose himself to the suspicion of fellow officers of having

shot a man while parked at midnight in an empty lot under the circumstances disclosed by the evidence.

Plaintiff sought to show that while waiting for the police ambulance at the A & P bakery insured asked Fuhry, "Why did you do that, I wanted to ask you a question." It is urged that this testimony tended to rebut Fuhry's story and was admissible as part of the *res gestae*, but the court sustained defendant's objection to the offer. However, later in the proceeding evidence of this conversation was elicited from the watchman and another employee who was also present when insured was brought into the bakery. Fuhry had previously testified that he had no conversation with insured that he recalled, notwithstanding the testimony of both disinterested witnesses that a conversation had taken place.

Insured was a middle-aged man, married for 20 years, and the father of four children. He had been employed by the Chicago Metal Manufacturing Company for about ten years. George F. Hauf, president and general manager of the corporation, testified that he had made frequent surveys of his employees affording him an opportunity to observe their habits and character. He said that insured was a capable workman employed as a welder, that he got along well with his fellow employees, worked steadily, and that his services were always satisfactory. William Gauweiler, secretary and treasurer of the corporation, said that he knew insured and testified from company records that he had been steadily employed for about ten years and up to the date of this occurrence, that he normally worked 46½ hours a week and had worked 38 hours during the preceding week. Jack Novak, another witness, said that he was the factory superintendent, knew insured and had opportunity to observe him frequently, that he had worked directly under Novak's supervision for eight or nine years, was an

industrious employee and a very fine workman. While insured was lying critically· ill at the Bridewell hospital, his wife and four children called there day and night but were never permitted to see or visit him.

Upon this state of facts the jury returned a verdict in favor of plaintiff for $1,000. Defendant's principal contention is that the uncontradicted evidence shows that insured was shot while attempting a holdup and that his injuries and death were not the result of accidental means, and it is argued that there was no legal evidence to support the verdict and therefore no error was committed by the trial court in entering judgment for defendant notwithstanding the verdict. The gravamen of the argument is that, according to Fuhry's testimony, insured was shot as the result of participating in an assault or felony, that this evidence was uncontradicted, and there was no competent evidence supporting the verdict of the jury finding the issues for plaintiff. Counsel rely on the rule that a jury cannot wilfully or from mere caprice disregard the testimony of an unimpeached witness, and they urge that Fuhry's testimony was unimpeached, was substantiated by the certified copy of the death certificate showing "justifiable homicide," and further supported by the testimony of the watchman and the other A & P employee that the 22 caliber revolver, which Fuhry said he found beside insured, was loaded.

Since the court sustained objections to questions tending to disclose the identity of Fuhry's companion when the insured was shot, Fuhry was the only available eyewitness to the shooting and under the circumstances it was impossible for plaintiff to produce any evidence directly contradicting Fuhry's testimony. However, his story must have sounded highly improbable to two juries who refused to believe him, and we know of no rule of law which requires a jury to believe the testimony of a witness whose evidence is tainted with suspicious circumstances, even though it is not

susceptible of contradiction under the circumstances here shown, and especially when not corroborated by other concurring evidence. Fuhry undoubtedly found himself in an embarrassing situation, and by his evidence sought to protect and exculpate himself from guilt. It is not uncommon for police officers to carry more than one weapon, and it may well be that the jury disbelieved his story that he averted an attempted holdup and that insured was armed when he approached Fuhry's automobile. When interrogated about the conversation with insured at the A & P bakery Fuhry testified that he had no conversation that he recalled, although both employees of the bakery said that some conversation took place. If insured had been engaged in the commission of a holdup, as Fuhry testified, it is extremely doubtful that he would have asked the officer, "Why did you do that, I wanted to ask you a question." This alleged conversation purports to have taken place shortly after the shooting and was properly part of the *res gestae*.

The fact that the coroner's jury exonerated the officer in an *ex parte* hearing does not establish the fact that insured was engaged in the commission of a felony, and if the jury disbelieved Fuhry's testimony to this effect it was justified in concluding that the shooting was accidental and not the result of participation in an assault or felony. These circumstances constituted evidence which the jury had a right to consider, along with the evidence of two of the insured's employers and an associate, all of whom testified that he had been a steady, industrious and efficient workman. It is not difficult to understand why a jury refused to believe that a man of middle age, married 20 years and the father of four children, who had been steadily employed for so many years, would suddenly emerge as the perpetrator of a serious felony.

It is fundamental in our law that it is error for the trial court to enter judgment in favor of defendant *non obstante veredicto* where there is evidence tending to support the verdict. The trial judge is not justified in weighing, the evidence. In *Gnat v. Richardson*, 311 Ill. App. 242 (Abst.), the court, in reversing a judgment notwithstanding the verdict in favor of defendants, said "the court erred . . . for the reason that there was evidence in the record from which, standing alone, the jury might, without acting unreasonably in the eyes of the law, find the material averments of the complaint to be sustained. A motion for a directed verdict under such circumstances is properly denied. The court in passing upon the defendants' motion for judgment notwithstanding the verdict is limited to facts appearing in evidence and must consider them in the light most favorable to the plaintiff."

Plaintiff's counsel seek reversal of the judgment herein and ask that the cause be remanded with directions that the trial court pass upon the motion for a new trial, which was undisposed of. The Supreme Court of Illinois has recently handed down two opinions where, under similar circumstances, judgment notwithstanding the verdict was entered, but a motion for a new trial was not disposed of. (*Walaite v. Chicago, R. I. & P. Ry. Co.*, 376 Ill. 59, and *Goodrich v. Sprague*, 376 Ill. 80.) It was held in those cases to be the duty of the court to pass upon both motions. If it were proper we would not hesitate to reverse the judgment notwithstanding the verdict and remand the case with directions that judgment be entered on the verdict returned by the jury, especially since the cause has been twice tried with the same verdicts. The circumstances and evidence in the case would warrant such an order, but in view of the foregoing decisions we have no recourse except to reverse the judgment notwithstanding the verdict and remand the cause with directions that the trial court pass upon the mo-

tion for a new trial, and for such other proceedings as may be appropriate and not inconsistent with this opinion.

*Judgment reversed and cause remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.