Athena Cielen, Plaintiff-Appellant, v. Aetna Life Insurance Company, a Corporation, and The Travelers Insurance Company, a Corporation, Defendants-Appellees.

Gen. No. 50,736.

First District, Fourth Division.

August 2, 1967.

Joseph C. Owens and Carl Schulz, of Chicago, for appellant.

Defrees, Fiske, Thomson & Simmons, of Chicago (Thomas J. Johnson, Jr., of counsel), for appellee Aetna Life Insurance Company.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (John M. O'Connor, Jr. and William D. Maddux, of counsel), for appellee Travelers Insurance Company.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Defendants issued group insurance policies on the life of plaintiff's husband as an employee of the Commonwealth Edison Company. After his death plaintiff was paid the basic insurance coverage under the policies ($8,000), but defendants declined payment under the double indemnity provisions covering accidental death. Plaintiff's suit therefor resulted in a jury verdict and judgment in favor of defendants, and plaintiff appeals.

The pertinent clauses of the policies provided, in substance, for the payment of additional benefits upon receipt of proof that death "resulted from accidental bodily injuries which were the direct and independent cause of death." There was also a provision that no such payment would be made for a death "caused or contributed to by disease or infection."

Plaintiff was the only witness on her own behalf and the facts which follow constitute a summary of her testimony. On July 9, 1963, the insured, plaintiff (his wife), their two-year-old daughter, and insured's nineteen-year-old nephew went on an outing to Loon Lake, Illinois. They reached the lake at about 8:00 a. m., and spent the day fishing until late afternoon when insured decided to

give his little girl a boat ride before leaving for home. All four members of the family got into the boat, which was equipped with an outboard motor, and rode around the lake. During the ride some teen-agers in another boat made two very close passes on insured's boat, the second of which caused insured's boat to capsize, and all occupants were thrown into the water. Insured had been sitting in the stern of the boat near the outboard motor, and just before plaintiff hit the water she saw him hanging onto the motor. Plaintiff sank into the water three times, and when she came up the third time she saw insured flopped on the bottom of the overturned boat and noticed that the motor was no longer attached. She saw that her husband "had a strange look, like he was looking into space."

With the aid of some fisherman, insured and his family were pulled alongside other boats some 1,000 feet to a pier on the lake shore. Insured was helped up onto the pier by being pushed from below and pulled by his arms from above. Plaintiff was standing on the pier with insured in her arms, when "he fell flat on his face on the pier." The nephew attempted artificial respiration until police and a rescue squad arrived with a pulmotor which they used for an additional 20 minutes, but all efforts to revive insured were unsuccessful. A doctor arriving on the scene shortly thereafter pronounced him dead. Although plaintiff was told by the police that she could not get her husband's body for 48 hours, she did see the body at about 1:00 p. m. the next day at a funeral parlor in Chicago. Plaintiff never gave authorization for an autopsy and none was ever performed.

The insured had been hospitalized for treatment of a heart condition from May 13 to June 30, 1959 and from January 30 to March 13, 1960. He was also under the care of Dr. Edward Malachowski for some period of time, and at the doctor's direction had been hospitalized again from February 22 to February 28, 1963 for an acute respira-

tory infection. During that time an electrocardiogram was made.

Defendants presented motions for a directed verdict at the close of plaintiff's case. They were denied, and defendants then proceeded with the introduction of evidence on their own behalf. This evidence was in no way helpful to the establishment of plaintiff's case, and in view of the conclusion which we reach in this case, we shall not include a recitation of the defense testimony in this opinion.*

 A great deal of the argument presented on this appeal concerns the question of whether the insured's preexisting heart condition excuses payment under the clause in the policies which exclude payment for death "caused or contributed to by disease or infection." Although we are inclined to agree with plaintiff's position, we do not decide this question. Instead, we affirm the judgment below on the ground that plaintiff failed to introduce any evidence to prove as required by the policies that the death of the insured "resulted from accidental bodily injuries which were the direct and independent cause of death." Schroeder v. Police & Firemen's Ins. Ass'n, 300 Ill App 375, 383–384, 21 NE2d 16. Defendants

---

* For example, Dr. Malachowski testified that he began treating the insured on May 23, 1960 with a diagnosis of coronary insufficiency; and that when the insured was in the hospital in 1963 for the respiratory infection, he reaffirmed the existence of the heart condition. In answer to a hypothetical question based upon the circumstances of the insured's death as disclosed by the evidence, and upon the insured's physical condition as testified to by him, Dr. Malachowski gave it as his opinion that the prior medical history could possibly have been related to the hypothetical person's death; that a damaged heart could very readily give up under excessive stress and strain; and that the occurrence described and the pathological condition of the heart could, working together, operate to cause the death. On cross-examination he testified that under the hypothetical circumstances there could have been a rupture of the aorta, or the pericardium, without preexisting disease, or the hypothetical man could have drowned.

25

correctly argue that a verdict should have been directed on their motion at the close of plaintiff's case. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. As this court held in Wellner v. New York Life Ins. Co., 331 Ill App 360, 364, 73 NE2d 156:

> Under the double indemnity clause, before the plaintiff can recover the burden is upon him to prove that insured's death occurred through external, violent and accidental means. This is the rule clearly laid down in Fidelity & Casualty Co. v. Weise, 182 Ill 496; Smith v. Metropolitan Life Ins. Co., 317 Ill App 624, and Gray v. Metropolitan Life Ins. Co., 308 Ill App 1.

In Smith v. Metropolitan Life Ins. Co., 317 Ill App 624, 629–630, 47 NE2d 330, we reviewed a double indemnity clause and held:

> . . . it is incumbent upon the plaintiff to allege that the insured died through accidental means; otherwise his complaint would not state a cause of action; and having made that allegation, it is incumbent upon him to sustain it by a preponderance of the evidence. . . . In the first instance plaintiff is required to make a prima facie case showing that the death was accidental.

■ ■ Plaintiff's evidence in the instant case failed utterly to prove any bodily injury sustained by her husband. Such an accidental bodily injury is not established by proof of exposure and exhaustion. Linnane v. Aetna Brewing Co., 91 Conn 158, 99 A 507, 509. Her evidence consisted merely of a recitation of the events of the day upon which her husband died. There was no evidence as to cause of death beyond her description of her husband immediately after the boat capsized as having "a strange look, like he was looking into space," and her testimony that after they helped him onto the dock he collapsed and

26

could not be revived. This is not sufficient, and a jury should not be permitted to speculate that under such circumstances there might have been a bodily injury of some kind and that death might have been caused thereby.

Of the many cases to which we have been cited by plaintiff, none involves a situation where the accident could not be traced directly to the death, and all involved accidents which resulted in bodily injury. Letz v. World Ins. Co., 336 Ill App 489, 84 NE2d 678 (bruises on elbow and shoulder with injury to chest, and medical evidence that these injuries caused a blood clot which resulted in death) ; Rebenstorf v. Metropolitan Life Ins. Co., 299 Ill App 71, 19 NE2d 420 (acerbation of gall bladder condition requiring surgery, which was followed by a fatal heart attack) ; Scanlan v. Metropolitan Life Ins. Co., 93 F 2d 942 (7th Cir, 1937) (bruised leg in area of varicose veins, with medical evidence that the bruise produced a blood clot which caused death) ; Preston v. Aetna Life Ins. Co., 174 F2d 10 (7th Cir, 1949) (stubbed toe with ulcer developing followed by amputation of leg) ; Sturm v. Employers' Liability Assur. Corp., Ltd., 212 Ill App 354 (finding of insured dead under water in a bathtub held prima facie evidence of accidental drowning) ; Plano Foundry Co. v. Industrial Commission, 356 Ill 186, 190 NE 255 (a cut which developed a streptococcus infection with medical evidence that this caused death). We have not found any authority for the proposition that in the absence of such proof of injury, as is present in the cited cases, recovery may be had under the type of double indemnity policy with which this appeal is concerned.

Our decision as to the failure of plaintiff's proof renders unnecessary discussion of alleged trial errors advanced on this appeal. Her claim for payment of interest and attorney's fees also falls, since Ill Rev Stats 1963, c 74, § 2, and c 73, § 767, are based upon wrongful with-

holding, and are not available to an unsuccessful litigant. Howard Foundry Co. v. Hartford Fire Ins. Co., 222 F2d 767, 770 (7th Cir, 1955), cert den 350 US 885; First Nat. Bank of Highland Park v. Boston Ins. Co., 17 Ill App2d 159, 170, 149 NE2d 420.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.