LENORA H. MADDOX, Plaintiff-Appellee, *v.* MFA LIFE INSURANCE COMPANY, Defendant-Appellant.

(No. 70-101;

Second District—March 3, 1971.

French, Davitt & Greene, of Rockford, for appellant.

Knight & Knight, of Rockford, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This is an appeal from a jury verdict whereby the plaintiff, as beneficiary of a life insurance policy, was awarded $15,000.

The defendant has raised various related contentions which may be condensed to the following points: 1) The verdict was against the mani-

fest weight of the evidence; 2) The court erred for failure to direct a verdict at the close of the case-in-chief and at the close of all of the evidence; 3) The court erred in refusing two of the defendant's instructions; and 4) Plaintiff's failure to reply to defendant's affirmative defense of suicide constituted an admission on her part which barred her recovery under the policy of insurance.

The law is well settled that a reviewing court will overrule a trial court when it finds that the verdict is against the manifest weight of the evidence. This rule does not mean that, had the reviewing court been the trier of fact, it would have come to the same conclusion as the jury. Rather, the rule dictates that the court will not substitute its judgment or findings of fact for those of the jury which had the opportunity to observe the witnesses and to hear all of the testimony, unless the evidence in behalf of the appellant is so strong and convincing as to overcome the evidence and presumptions, if any, existing in favor of the opposite party.

In the case at bar, the jury was instructed by the defendant that, "Where a man suffers injuries which might have been caused by accident, or might have been intentionally inflicted upon himself, and there is no preponderance of evidence as to the cause of such injuries, the presumption is, that they occurred by accident." We believe that a review of the evidence, when viewed in the light of this presumption, shows that the jury verdict was not against the manifest weight of the evidence.

The following facts constituted the plaintiff's case-in-chief. Billie G. Maddox, husband of plaintiff, died on October 16, 1968. An insurance policy on his life, issued by the defendant, consisted of a $5,000 ordinary life provision, a $5,000 ten-year term insurance provision, and a $5,000 accidental death provision. The policy stated that there would be no recovery for "suicide while sane or insane within 2 years of the policy date." The insured died within 2 years of the policy date. After presenting these facts, the defendant moved for a directed verdict, which motion was denied.

Thereupon, the defendant called Ralph S. Coombs, a deputy coroner and a licensed embalmer, whose testimony neither proved or disproved suicide. According to Coombs, the decedent had a shotgun wound in his chest, the size of a "silver dollar;" the wound was surrounded by a dark area; his blood contained alcohol. Such testimony could establish either an accidental discharge of the gun from a close range or an intentional act by the decedent, causing the wound.

██ The coroner's certified copy of the certificate of death was then produced; it stated that the immediate cause of death was a gunshot wound in the chest; that the wound was self-inflicted; and, that death

was caused by suicide. Upon objection to the admittance of the certificate, the court admitted it for the limited purpose of showing that death was the result of a gunshot wound in the chest. The trial court was correct in its ruling on this point. In a recent opinion, the Supreme Court held that a statement of the cause of death in such a certificate is not a fact entitled to the status of *prima facie* evidence under the Vital Statistics Act (Ill. Rev. Stat. 1969, ch. 111½, par. 73-25; *People v. Fiddler* (1970), 45 Ill.2d 181, 185.

Kenneth Flanigan, a detective, testified that he and his partner, in response to a call, went to decedent's home and, upon arrival, found that Deputy Huston had arrived first and was administering first aid to the decedent who was found in the living room. One Leroy Mattux, who was in the kitchen, had been a drinking partner of the decedent during the night preceding his death. Flanigan was asked, "What if anything did you see in the room near him (Billie)?" He replied, "There was a 12 gauge Iver Johnson single shot shotgun." Later he stated, "I understand that Deputy Huston had to move the gun to administer first-aid." Flanigan learned that the decedent drank frequently and that he had thrown his wife out of the house on the fourth of October, 1968. Flanigan could not state that the decedent shot himself or that Mattux shot him, but stated that, "The gun was brought to the Sheriff's office, and apparently printed, and no visible prints on the gun. So there were no other prints taken from anybody."

The location of the gun under or near the body does not disprove either theory. Had the weapon fallen, it could well have discharged close to the decedent and landed near him. The lack of fingerprints lends weight to the claim that the decedent did not shoot himself.

Vicky Marie Pixler, a thirteen year old girl who was a neighbor of the decedent and a playmate of his children, testified, in response to defendant's questioning, that she received a telephone call from him on the morning of October 16, 1968. She stated that she was familiar with the way he slurred words when he had been drinking; that during the phone conversation his speech was not affected; that he told her that his boss had asked him to come back to work and that he said, "if he wasn't in the next day he would be dead"; that he also said to be good to his kids and that "the world was all upside down." Vicky's testimony lends weight to the suicide claim.

■■ Officer Flanigan's partner and Officer Huston did not testify. Neither did Leroy Mattux. There was no further evidence in regard to the position of the gun in relation to the decedent's body at the time Officer Huston came into the room. There is no evidence stating who owned the gun, how it came to be in the room, or whether the gun was

stored in such a manner as to permit it to fall or be accidentally pushed over. In short, there is nothing in the facts which would require a finding of accidental death or a finding of suicide. We therefore hold that, in view of the defendant's instruction to them (as quoted above), the jury's finding of accidental death was not against the manifest weight of the evidence.

Defendant's next contention is that there should be a new trial because the trial court refused the following instructions:

"Defendant's Instruction No. 13 * * *

The Court instructs the jury, that if they believe from the evidence in this case, that the plaintiff's decedent suffered the injury in question through violent, external and accidental means, which were not the resuit (sic) of any unnecessary exposure to danger on his part, then you will find the issues for the plaintiff; but if you should believe from the evidence that said injury was the result of an unnecessary exposure of himself to danger (not in any attempt to save human life), then your verdict should be for the defendant.

Defendant's Instruction No. 17 * * *

The Court instructs the jury that if you believe from the evidence that Billie G. Maddox took his own life, that fact alone does not raise a presumption and is not of itself evidence that he was insane at the time of committing said act. But the jury may weigh such act and the circumstances attending it, so far as disclosed by the evidence, in connection with all the other evidence in the case bearing on that question, in determining his mental condition at the time of the act of self destruction."

■■ The contract excepted suicide "while sane or insane." Our courts have interpreted this phrase to mean that an act of self destruction is suicide unless the decedent could not form the intent to destroy himself or would not comprehend what the results of his action would be. (*Supreme Lodge v. Gelbke* (1902), 198 Ill. 365, 369.) Neither the issue of sanity nor "unnecessary exposure" was ever raised in the case and the court properly refused both instructions.

■■■ The defendant further contends that the failure of the plaintiff to reply to his affirmative defense of suicide, automatically barred the plaintiff from recovery herein. Plaintiff alleged "accidental death"; defendant answered, "suicide". These are antithetical terms. Suicide implies intentional self-destruction and knowledge of the probable result of the destructive act. Accidental implies either lack of intent or lack of knowledge of the result or both.

In *Solone v. Reck* (1961), 32 Ill.App.2d 308, a case cited by the defendant, the complaint alleged that plaintiff was injured when the car

in which she was riding was struck by an automobile owned and negligently operated by defendant. The answer admitted ownership, but denied that defendant was driving. The answer further alleged that the car was being driven by his son, using the car on an errand for himself and not as an agent for his father. There was no reply to the contention that the son was driving. The court denied a motion for summary judgment stating, at page 311:

"* * * the pleadings effectively raise the issue on this narrow, but vital, point, without the need of a reply. The substance of the complaint and answer constitutes mutual denials, and the complaint itself thus meets and negatives the matter set up in the answer. [Citations omitted.]"

The exact same reasoning applies to this case. Suicide and accidental death are mutual denials, and the complaint itself meets and negatives the answer. Nothing further was necessary. As plaintiff stated in her brief, "The purpose of pleading is to present, define, and narrow the issues, not to conduct a running argument."

But even assuming, *arguendo,* that this was an affirmative defense, and that plaintiff's failure to reply was an admission, the defendant waived the effect of the admission. In the case of *Pree v. Hymbaugh* (1959), 23 Ill.App.2d 211, 214, the court, in quoting from *Cienki v. Rusnak* (1947), 398 Ill. 77, said:

" 'The failure to file a reply did not constitute an admission of the well-pleaded facts set forth in the amended answer for the reason that defendant, in introducing evidence in support of each affirmative defense, must be deemed to have waived a reply, regardless of the allegedly erroneous order of February 28 and regardless of his denial of waiver made at the commencement of the trial. Where, in the absence of a reply, defendant introduces evidence to prove an affirmative defense, the failure to file a reply is waived and the absence of a reply does not constitute an admission. [Citations omitted.] This is true even where defendant specifically asserts at the time of the trial that he does not waive the failure to file a reply. The important and controlling circumstance is not what the defendant says but what he does, and the introduction of evidence in support of affirmative defenses constitutes the waiver.' "

In the case at bar, the defense offered the Pixley girl's testimony about decedent's phone call. In fact, all of the witnesses who testified about the circumstances surrounding decedent's death were called by the defense. Defendant's actions were those of one rebutting a claim of accidental death by attempting to prove suicide.

Finally, we note that, at the close of the plaintiff's case-in-chief, de-

fendant asked the trial court to return a verdict of "not guilty." The trial judge properly denied this motion because, at this particular stage of the proceedings, plaintiff had shown the elements required for recovery on the ordinary life portion and the ten year term portion of the policy; thus, there could not be a verdict of "not guilty" on the entire claim. Further, the motion for a directed verdict at the close of all of the evidence was properly denied under the *Pedrick* rule, see *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510.

For these reasons we affirm the judgment of the trial court.

Judgment affirmed.

ABRAHAMSON and GUILD, JJ., concur.