JOANNE PRATER, Plaintiff-Appellant, v. J. C. PENNEY LIFE INSURANCE COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 86—2996

Opinion filed April 22, 1987.

Arthur H. Levinson, of Spinak, Levinson & Associates, of Chicago, for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (C. Thomas Hendrix and Russell P. Veldenz, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Joanne Prater sued J. C. Penney Life Insurance Company for breach of contract when it refused to pay plaintiff accidental life insurance benefits because it found that the named insured, John Prater, died while committing or attempting to commit an assault or felony. Following a trial without a jury, the court entered judgment in favor of defendant. Plaintiff appeals, contending that the trial court's decision is contrary to the manifest weight of the evidence.

At the time of the death of plaintiff's husband, he was covered under a $15,000 life insurance policy issued by defendant and listing plaintiff as the beneficiary. Defendant denied coverage under a provision which excludes coverage when the insured's death is an indirect or direct result of "the commission or attempted commission of an assault or felony by such Insured."

Willie Falls, an eyewitness, testified for plaintiff that on January

11, 1980, at approximately midnight, he arrived at a tavern in Chicago. Shortly thereafter, Falls observed decedent and another man wrestling. Decedent appeared to be drunk. Falls was five to six feet away and had a clear view of decedent, whose hands were empty. Cad Shannon, an off-duty police officer, separated the two men. While Shannon was standing between Falls and decedent, he pushed decedent to the ground. Shannon shot decedent once in the head and then uttered a racial epithet. Falls saw nothing in decedent's hands. Shannon returned his gun to his holster, stepped up to decedent, and then stepped back again. These events took place in less than 30 seconds. Falls left the tavern immediately. Falls testified further that he did not know what started the argument and that he did not hear any of the comments exchanged between the participants. Falls did not hear decedent threaten anyone, and he did not hear Shannon identify himself as a police officer.

Cad Shannon testified for defendant that he had been a police officer for 16 years and carried a handgun while off duty. On the night in question, Shannon was at the tavern for about one-half hour and drank one shot of whiskey. He then left the tavern and returned at about 10:30 p.m. Several minutes later, Shannon heard a commotion and heard his name being called, possibly by Jones, one of the tavern's owners who was present. Shannon approached decedent, Jones, and McDonald, a man whom Shannon knew. Shannon saw that decedent held a weapon in his hand, which was perpendicular to his side.

Shannon asked twice what was happening. Decedent turned his back to Shannon and appeared to be talking to Jones. Shannon drew his gun and held it next to his right leg. Decedent turned toward Shannon, who stepped toward decedent, told decedent not to move, and again asked decedent what was happening. As decedent turned toward Jones, Shannon moved closer. Decedent raised his gun and pointed it at Shannon. Shannon raised his gun and fired one shot, hitting decedent in the head.

Decedent fell against the wall and slid to the floor. Shannon placed his foot on decedent's weapon, which was still in decedent's right hand, until Shannon determined that he was dead. Shannon then locked the tavern door to prevent customers from leaving before the police arrived. Shannon returned to the body, but did not touch the body or the gun. The police arrived several minutes later.

Officer Michael Tolliver testified for defendant that Tolliver and his partner had first received a dispatch regarding a robbery in progress at the tavern and within 20 seconds received a second dispatch reporting that a man had been shot at the tavern. Tolliver arrived at

the tavern shortly after the shooting, between 10:30 p.m. and 11:30 p.m. Decedent's body was slumped against the wall. A loaded gun was in decedent's right hand, with one finger inside the trigger guard and the thumb near the butt of the gun. Tolliver had previously worked with Shannon.

Dr. Robert Stein, the chief medical examiner for Cook County, testified regarding the autopsy which he performed on decedent. The bullet entered decedent's forehead. Because the bullet followed a straight path, it was not possible to determine the bullet's angle of entry into the skull. Dr. Stein testified that stippling, which is gun powder found within the skin, was approximately 2½ inches in diameter. Stippling can be used to determine the distance from which a weapon was fired. In Dr. Stein's opinion, the weapon was fired one to three feet away from decedent. Dr. Stein qualified his opinion by stating that he was not a ballistics expert and that to accurately determine the distance it would be necessary to consider factors such as the weapon's ballistics, age, condition, and rifling and the ammunition's ballistics, type, charge, and age. Dr. Stein had not considered any of these factors. If he were to consider these factors, Dr. Stein might change his opinion regarding the distance from which the weapon was fired.

■ Plaintiff contends that the trial court's finding in favor of defendant was against the manifest weight of the evidence. In a bench trial, the court is in the best position to observe the demeanor of the witnesses, judge their credibility, and determine how much weight to give their testimony. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 469 N.E.2d 183.) Where the findings of fact must be determined from the credibility of the witnesses, a reviewing court will defer to those findings unless they are against the manifest weight of the evidence. *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 481 N.E.2d 712; *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

■ Under a life insurance policy providing double indemnity for death caused by accidental, external, and violent means, the plaintiff-beneficiary has the burden of establishing a *prima facie* case that the death was caused by accidental, external, and violent means. (*Cielen v. Aetna Life Insurance Co.* (1967), 86 Ill. App. 2d 22, 229 N.E.2d 571, *cert. denied* (1968), 391 U.S. 915, 20 L. Ed. 2d 654, 88 S. Ct. 1809; *Dietz v. Metropolitan Life Insurance Co.* (1940), 305 Ill. App. 507, 27 N.E.2d 540.) Where the policy excludes coverage for death caused while the insured was committing or attempting to commit an assault or felony, defendant then has the burden of going forward

with evidence that the death resulted from such a cause. (See *Hotwick v. Equitable Life Assurance Society* (1972), 5 Ill. App. 3d 327, 282 N.E.2d 222; *Zwierzycki v. Metropolitan Life Insurance Co.* (1942), 316 Ill. App. 345, 45 N.E.2d 76.) Plaintiff, however, retains the burden of proof. *Hotwick v. Equitable Life Assurance Society* (1972), 5 Ill. App. 3d 327, 282 N.E.2d 222.

In the present case, plaintiff established her *prima facie* case when she proved that defendant was shot to death by another person. Defendant met its burden of going forward by establishing through Shannon's testimony that decedent died while committing an assault or felony when he pointed his weapon at another person. (See *Powell Brothers v. Penn Mutual Life Insurance Co.* (1943), 318 Ill. App. 643, 48 N.E.2d 206 (abstract of opinion).) Shannon's testimony that decedent had a weapon was supported by Tolliver's testimony that he received a dispatch regarding a robbery in progress before receiving a message reporting that a man had been shot. Tolliver also testified that when he arrived at the scene several minutes later, there was a gun in decedent's hand with his fingers in position to pull the trigger.

■ Plaintiff argues that she also met her overall burden of proof, portraying Shannon's testimony as being unbelievable and biased. While Shannon's testimony may have been colored by his apprehension of criminal liability, this was a factor for the trial court to weigh. Moreover, Shannon's varying testimony as to the distance he stood from decedent did not substantially weaken his credibility because he had been referring to the distance between them when he first noticed decedent's weapon, not the distance when he shot decedent. Shannon testified that he moved closer to decedent several times before firing his weapon. Overall, Shannon's testimony was extremely detailed and consistent, and the trial court could properly find it was credible.

Dr. Stein's testimony does not offer strong support for either party. He could not determine the angle at which the bullet entered decedent's skull. Dr. Stein's opinion that decedent was shot from a distance of one to three feet does not necessarily contradict Shannon's testimony. Furthermore, Dr. Stein qualified his opinion by listing several factors which he had not taken into consideration in estimating the distance from which decedent was shot and which might cause him to alter his opinion. Dr. Stein's testimony, therefore, is not of such a nature that it required the trial court to enter a contrary decision. See *Country Life Insurance Co. v. Goffinet* (1969), 117 Ill. App. 2d 338, 254 N.E.2d 281.

■ Plaintiff also relies on Falls' eyewitness testimony, arguing

that Falls was the only unbiased witness to the shooting who testified. Falls' testimony that decedent held nothing in his hands before or after the shooting clearly supports plaintiff. The trial court's finding is not against the manifest weight of the evidence, however, merely because the record might support a contrary decision. Instead, a finding is against the manifest weight of the evidence only if, on hearing such evidence, no reasonable person would reach the conclusion arrived at by the trial court. *Coduti v. Hellwig* (1984), 127 Ill. App. 3d 279, 469 N.E.2d 220.

Furthermore, Falls' testimony was weakened by the fact that he stated the shooting occurred at midnight, while Shannon testified it took place between 10:30 and 11 p.m. and Tolliver said he arrived between 10:30 and 11:30 p.m. From Falls' testimony that Shannon stood between decedent and Falls, the trial court could reasonably infer that Falls did not have a clear view of decedent. The trial court also could choose not to believe Falls' testimony that Shannon shoved decedent to the ground and then drew his gun and shot him in the presence of the other tavern customers.

■ While plaintiff would have us infer that Shannon or someone else placed a gun in decedent's hand after he was dead, there is nothing in the record to support this conclusion, and the trial court was not required to make its decision based upon such speculation. The trial court was presented with two conflicting versions of how decedent was killed. Whether he was attempting to commit an assault or felony at the time of the shooting was a question for the trier of fact. (*Zwierzycki v. Metropolitan Life Insurance Co.* (1942), 316 Ill. App. 345, 45 N.E.2d 76.) There was sufficient evidence in the record to support the trial court's findings and we cannot say that the court's judgment is against the manifest weight of the evidence. See *Maddox v. MFA Life Insurance Co.* (1971), 132 Ill. App. 2d 109, 267 N.E.2d 723; *cf. Zwierzycki v. Metropolitan Life Insurance Co.* (1942), 316 Ill. App. 345, 45 N.E.2d 76 (evidence did not establish that insured was engaged in commission of felony at time of shooting).

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE and FREEMAN, JJ., concur.