NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231060-U

NO. 4-23-1060

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 8, 2024
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.R., a Minor, | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
|         Petitioner-Appellee, | ) | Sangamon County |
|         v. | ) | No. 19JA40 |
| Tommie B., | ) | |
|         Respondent-Appellant). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and DeArmond concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appellate court affirmed the trial court's order terminating respondent's parental rights where the court's unfitness finding was not against the manifest weight of the evidence.

¶ 2 On October 12, 2023, the trial court found respondent, Tommie B., to be an unfit parent and determined that it was in the best interest of respondent's minor daughter, A.R. (born October 2012), to terminate respondent's parental rights. Respondent appeals, arguing that the court's finding of unfitness was against the manifest weight of the evidence. We affirm.

¶ 3          I. BACKGROUND

¶ 4          A. Case Opening

¶ 5 On March 6, 2019, the State filed a petition for adjudication of wardship, alleging A.R. was neglected and that A.R.'s environment was injurious to her welfare. The State asserted A.R. was not "receiving the proper care and supervision necessary for her well[-]being" because

A.R.'s mother, Jaquayla R., "failed to make a proper care plan for the minor." Further, Jaquayla R.'s "mental disability" left A.R. without proper care. At a shelter care hearing that day, the trial court found there was probable cause to believe A.R. was neglected and placed temporary guardianship and custody of A.R. with the Illinois Department of Children and Family Services (DCFS).

¶ 6        On June 6, 2019, the trial court adjudicated A.R. neglected and dependent pursuant to sections 2-3(1) and 2-4(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1), 2-4(1)(b) (West 2018)).

¶ 7        Following a July 3, 2019, dispositional hearing, the trial court made A.R. a ward of the court and granted continued guardianship and custody with DCFS.

¶ 8        On February 23, 2022, the trial court changed the permanency goal to substitute care pending termination of respondent's parental rights.

¶ 9        On April 6, 2022, the State filed a motion for termination of parental rights. The State alleged respondent was unfit in that (1) he failed to maintain a reasonable degree of interest, concern, or responsibility as to A.R.'s welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) he failed to make reasonable efforts to correct the conditions that caused A.R. to be removed during a nine-month period after A.R. was adjudicated neglected (750 ILCS 50/1(D)(m)(i) (West 2022)); and (3) he failed to make reasonable progress toward the return of A.R. to his care during a nine-month period after A.R. was adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2022)). The relevant nine-month periods for the last two allegations were June 6, 2019, to March 6, 2020; March 6, 2020, to December 6, 2020; and December 6, 2020, to September 6, 2021. The State also included Jaquayla R. in the motion for termination of parental rights. However, Jaquayla R. surrendered her parental rights on May 31, 2022, and is not a party to this appeal.

¶ 10                              B. Fitness Hearing

¶ 11        The trial court commenced a three-day fitness hearing on May 18, 2023. The State first presented the testimony of Amber Jones, a permanency supervisor with DCFS. Jones was assigned to the case from March 2019 until September 2019. During that time, Jones testified respondent did not participate in visitation with A.R.

¶ 12        Markasha Chambers testified she was A.R.'s caseworker from September 2019 until October 2020, and again from September 2021 until September 2022. Chambers testified respondent's service plan required that he: (1) cooperate with the agency, (2) obtain and maintain appropriate housing, (3) obtain a legal means of income, (4) complete a sex offender assessment, and (5) complete a substance abuse assessment. Respondent was required to complete 45 random drug drops. According to Chambers, respondent tested positive for tetrahydrocannabinol (THC) during 40 drug drops and missed 5 other scheduled drug drops. Respondent tested positive for cocaine in January 2020 and again in August 2021. Chambers described respondent's communication with the agency as "very sporadic" noting from "April 2020 all the way until *** about October [2020], [she] barely kind of heard from him." Regarding visitation, respondent was inconsistent and "wouldn't show up." According to Chambers, "[I]t seemed [respondent] kind of struggled to *** follow through with the visitations."

¶ 13        Chambers testified A.R. had been diagnosed with sickle cell anemia. When asked whether respondent understood A.R.'s medical condition, Chambers responded, "I think [respondent] knew her diagnosis, but he didn't really fully commit to actually understanding what sickle cell actually is and the process, and the medication and the appointments." Respondent did not attend A.R.'s medical appointments.

¶ 14		Toria Stubbs testified she was formerly a case supervisor with Rutledge Youth Foundation. From October 2020 until approximately June 2021, Stubbs indicated respondent "did not have any communication" with the agency.

¶ 15		At the continued fitness hearing on October 12, 2023, Alyssa Romanotto testified she was A.R.'s current caseworker. According to Romanotto, respondent had failed to appear for every scheduled drug drop since "late July" 2023 and therefore she was unable to verify his sobriety. As of the date of the hearing, Romanotto concluded the agency was no closer to returning A.R. to respondent's care than it was at the time of the case opening. Romanotto opined that respondent did not understand A.R.'s sickle cell anemia diagnosis and what that diagnosis entailed. Respondent also did not "ask too much about how [A.R. was] doing." Further, Romanotto noted since March 2022, respondent's visits had been suspended due to nonattendance.

¶ 16		The trial court found the State proved the allegations in its motion by clear and convincing evidence. Specifically, the court noted respondent had "failed over a period of time, pretty much the whole period of time, *** to maintain a reasonable degree of interest, concern, or responsibility as to his child's welfare." The court continued, "[T]he lack of visitation, lack of contact, lack of learning about [A.R.'s] sickle cell anemia are the main focuses of the Court's decision."

¶ 17		C. Best Interest Hearing

¶ 18		The trial court then proceeded to the best interest hearing. After receiving evidence and hearing the parties' arguments, the court concluded it was in A.R.'s best interest that respondent's parental rights be terminated.

¶ 19		This appeal followed.

- 4 -

¶ 20                                    II. ANALYSIS

¶ 21            On appeal, respondent challenges only the trial court's unfitness finding, arguing it was against the manifest weight of the evidence. We disagree.

¶ 22            Involuntary termination of parental rights under the Juvenile Court Act is a two-step process. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 67. The State must first prove by clear and convincing evidence the parent is unfit under any single ground listed in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *J.H.*, 2020 IL App (4th) 200150, ¶ 67. If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the child. *In re D.T.*, 212 Ill. 2d 347, 363-366 (2004). We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence 'clearly' calls for the opposite finding [citation], such that 'no reasonable person' could arrive at the [trial] court's finding on the basis of the evidence in the record." *J.H.*, 2020 IL App (4th) 200150, ¶ 68 (quoting *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006) and *Prater v. J.C. Penney Life Insurance Co.*, 155 Ill. App. 3d 696, 701 (1987)).

¶ 23            The trial court found respondent was an unfit parent as defined in section 1(D)(b) of the Adoption Act. Section 1(D)(b) states a parent will be considered an "unfit person" if he or she fails "to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2022). In determining whether a parent showed reasonable concern, interest, or responsibility as to a child's welfare, the court must examine "the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278 (1990).

¶ 24    Here, Chambers testified respondent had been "very sporadic" in communicating with the agency. Stubbs further indicated respondent wholly failed to communicate with the agency from late October 2020 until around June 2021. Further, respondent did not attend A.R.'s medical appointments or fully understand her sickle cell anemia diagnosis. Moreover, respondent failed to engage in visits to the point where the agency suspended visitation due to his nonattendance. During the pendency of the proceedings, respondent tested positive for cocaine twice, tested positive for THC 40 times, missed 5 scheduled drug drops, and stopped attending drug drops altogether in late July 2023. The trial court noted respondent's positive drug test results "despite having gone through substance abuse treatment." Additionally, Chambers noted respondent never received a "satisfactory" rating on his service plan. Based on the evidence presented, we cannot say the court's finding respondent was an unfit parent by failing to maintain a reasonable concern, interest, or responsibility as to A.R.'s welfare was against the manifest weight of the evidence.

¶ 25    As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the remaining grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we affirm the trial court's judgment.

¶ 28    Affirmed.