NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240632-U

NO. 4-24-0632

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 22JA114 |
| v. | ) | |
| | ) | Honorable |
| Kwame A., | ) | Karen S. Tharp, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 2    Respondent, Kwame A., appeals the trial court's judgment terminating his parental rights to his minor child, L.R. (born June 2013). On appeal, respondent argues the court erred in finding he was an unfit parent. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                  A. Case Opening

¶ 5    On May 3, 2022, the State filed a petition seeking to adjudicate L.R. neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022)). The State alleged L.R. was neglected due to being in an environment injurious to her welfare (*id.* § 2-3(1)(b)) in that (1) her mother, Jacquelyn R., had mental health issues;

(2) Jacquelyn's home had unsanitary conditions, including clutter, garbage, feces, and dead rodents on the floor; and (3) Jacquelyn failed to cooperate with intact services. (L.R.'s father was listed as "unknown" in the neglect petition.) Following a shelter care hearing the same day, the trial court ordered L.R.'s temporary guardianship and custody placed with the Illinois Department of Children and Family Services (DCFS). On October 19, 2022, the court adjudicated L.R. neglected as to the second and third counts of the State's petition.

¶ 6        On November 10, 2022, DCFS submitted a report for the dispositional hearing scheduled for November 16, 2022. The report identified respondent as L.R.'s "putative father." On November 16, 2022, the trial court entered a dispositional order finding Jacquelyn unfit, unable, or unwilling for reasons other than financial circumstances alone to care for L.R., making L.R. a ward of the court, and continuing her guardianship and custody with DCFS.

¶ 7        On April 18, 2023, DCFS submitted a report for the permanency review hearing scheduled for the following day. The report stated respondent "failed to appear for at least two scheduled paternity testing dates and times." Additionally, respondent had been sentenced to four years' imprisonment in the Illinois Department of Corrections (DOC) on March 22, 2023, and was in Graham Correctional Center as of the date of the report.

¶ 8        On August 28, 2023, respondent took a paternity test and was determined to be L.R.'s father. DCFS did not receive the results until September 7, 2023. At the permanency review hearing on September 13, 2023, the trial court appointed counsel for respondent and, over his objection, changed the goal to substitute care pending determination of termination of parental rights.

¶ 9        On December 13, 2023, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was unfit for (1) failing to maintain a reasonable

degree of interest, concern, or responsibility as to L.R.'s welfare (750 ILCS 50/1(D)(b) (West 2022)), (2) being depraved (*id.* § 1(D)(i)), (3) failing to make reasonable efforts to correct the conditions that were the basis for L.R.'s removal during the nine-month period following the adjudication of neglect spanning October 19, 2022, to July 19, 2023 (*id.* § 1(D)(m)(i)), and (4) failing to make reasonable progress towards L.R.'s return during the same period (*id.* § 1(D)(m)(ii)).

¶ 10                                    B. The Termination Proceeding

¶ 11            The trial court held the hearing on the termination petition on April 4, 2024.

¶ 12                                    1. *Fitness Hearing*

¶ 13                                    a. Respondent's Criminal History

¶ 14            The trial court admitted the following certified copies of respondent's felony convictions: (1) a 2000 conviction from McLean County for aggravated battery and retail theft, (2) a 2002 conviction from McLean County for failing to register as a sex offender, (3) a 2020 conviction from Sangamon County for theft, and (4) 2006, 2013, 2020, and 2023 convictions from Sangamon County for failing to register as a sex offender.

¶ 15                                    b. Respondent's Testimony

¶ 16            Respondent testified he has been continuously incarcerated since December 2022 and was on a waiting list for an educational program at his current facility. When asked about his convictions for failing to register as a sex offender, respondent stated, "I don't think that's fair. I don't think that's right. Like—like how they keep punishing me for one thing." When told he was "depraved" for having as many felony convictions as he had and asked if he felt he was rehabilitated, respondent stated he was. Respondent explained, "I don't know how—how it's fair

- 3 -

for you to *** say I'm depraved just because I have three felonies. Those felonies are questionable felonies."

¶ 17                                      c. The Trial Court's Unfitness Finding

¶ 18         The trial court found the State met its burden of proving respondent unfit by clear and convincing evidence as to all four counts of the termination petition. The court began by noting that respondent's criminal history reflected he had "made five different trips to [DOC] on seven felony cases." Given that at least one of those convictions was within the last five years, the evidence established a rebuttable presumption that respondent was "depraved." The court noted it "heard no evidence to show that [respondent] is rehabilitated. *** And also his—his own description that they are questionable felonies, so I'm not sure he still understands why he's in DOC." The court concluded, "If you want to be a parent, it's probably best to stay out of a prison. [Respondent] is depraved, as noted by the convictions. No information has been provided to rebut that presumption."

¶ 19                                      2. *Best Interest Hearing*

¶ 20         Following the best interest hearing, the trial court found it was in L.R.'s best interest to terminate respondent's parental rights.

¶ 21         This appeal followed.

¶ 22                                      II. ANALYSIS

¶ 23         We note respondent does not challenge the trial court's best interest finding on appeal. Instead, respondent challenges only the court's unfitness finding. Accordingly, we confine our analysis to that issue.

¶ 24         Involuntary termination of parental rights under the Juvenile Court Act is a two-step process. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 67, 162 N.E.3d 454. The State must

first prove by clear and convincing evidence the parent is unfit under any single ground listed in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *J.H.*, 2020 IL App (4th) 200150, ¶ 67. If the State proves unfitness, it then must prove by a preponderance of the evidence termination of parental rights is in the best interest of the minor. *In re D.T.*, 212 Ill. 2d 347, 363-66, 818 N.E.2d 1214, 1226-28 (2004). We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence 'clearly' calls for the opposite finding [citation], such that 'no reasonable person' could arrive at the [trial] court's finding on the basis of the evidence in the record." *J.H.*, 2020 IL App (4th) 200150, ¶ 68 (quoting *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006), and *Prater v. J.C. Penney Life Insurance Co.*, 155 Ill. App.3d 696, 701, 508 N.E.2d 305, 308 (1987)).

¶ 25        Here, the trial court found respondent unfit as alleged in all four counts of the termination petition. However, "[a]s the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493, 797 N.E.2d 1112, 1120 (2003).

¶ 26        Under section 1(D)(i) of the Adoption Act, "[t]here is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2022). "Certified copies of the requisite convictions create a *prima facie* showing of depravity, which shifts the burden to the parent to show by clear and convincing evidence that he is, in fact, not depraved." *In re A.H.*, 359 Ill. App. 3d 173, 180, 833 N.E.2d 915, 921 (2005). A parent may "rebut the evidence of depravity with proof of rehabilitation or with evidence that the circumstances surrounding the

crimes show the crimes did not result from depravity." *In re T.T.*, 322 Ill. App. 3d 462, 466, 749 N.E.2d 1043, 1046 (2001). "The Illinois Supreme Court has defined depravity as ' "an inherent deficiency of moral sense and rectitude." ' " *In re J'America B.*, 346 Ill. App. 3d 1034, 1045, 806 N.E.292, 303 (2004) (quoting *In re J.A.*, 316 Ill. App. 3d 553, 561, 736 N.E.2d 678, 685 (2000), quoting *Stalder v. Stone*, 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952)).

¶ 27 Here, the trial court admitted into evidence certified copies of seven felony convictions, with the most recent one being entered in March 2023. This collection of convictions established a presumption of depravity which respondent could rebut through evidence of rehabilitation or evidence the crimes did not result from an inherent deficiency of moral sense and rectitude. *T.T.*, 322 Ill. App. 3d at 466; *J'America B.*, 346 Ill. App. 3d at 1045. However, respondent failed to present any evidence of either consideration. Although educational programs may allow an incarcerated participant to achieve some level of rehabilitation, respondent was merely on a waiting list for one, and there was no evidence he completed any others. More importantly, respondent dismissed the severity of his repeated failures to register as a sex offender (and implicitly the underlying sexual offense) by complaining he was being continuously "punish[ed] for one thing." Respondent also described his criminal history as containing "questionable felonies." (Respondent's criminal history included convictions for aggravated battery and theft, as well as the failure to register as a sex offender.) Respondent also did not express any understanding of the gravity of his criminal conduct, much less any remorse.

¶ 28 In sum, respondent did not present any evidence of rehabilitation or possession of the moral sense and rectitude required for parenting a child. Thus, he did not rebut the

- 6 -

presumption of depravity. Accordingly, the trial court's finding respondent was unfit due to depravity was not against the manifest weight of the evidence.

¶ 29                                    III. CONCLUSION

¶ 30        For the reasons stated, we affirm the trial court's judgment.

¶ 31        Affirmed.